FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

2012 AUG 20 PM 2:07

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

JACKSONVILLE Division

## CIVIL RIGHTS COMPLAINT FORM

WALTER D. MORRISON

CASE NUMBER: 3:12-CV-940-J-32JBT
(To be supplied by Clerk's Office)

(Enter full name of each Plaintiff and prison number, if applicable)

v.

OLUGBENGA OGUNSANWO,
DR. MARTIN ROSENTHAL, FRANK
JOHANSON, DR. J. AVILES,
DR. RADI

(Enter full name of each Defendant. If additional space is required, use the blank area directly to the right).

### ANSWER ALL OF THE FOLLOWING QUESTIONS:

I. PLACE OF PRESENT CONFINEMENT: Union Correctional Institution,
(Indicate the name and location)
7819 N.W. 228th Street, Raiford, Florida 32026

II. DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS? Yes (X) No ( )

[If your answer is YES, after reviewing the exhaustion requirements, answer the following questions]

DC 225 (Rev. 9/03)

1

EXHAUSTION OF ADMINISTRATIVE REMEDIES: Pursuant to the Prison Litigation Reform Act or 1995, Title VIII, Section 803 Amendments to Civil Rights of Institutionalized Persons Act, exhaustion of administrative remedies is required in any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility. Any required grievances, appeals, and responses must be submitted to the Court to verify exhaustion. (If your Complaint concerns conditions at state prison facilities, you must answer the following questions in Section II of this form. If the Complaint concerns conditions at a county jail or local correctional facility, you must complete Section III of this form.)

EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:

General Grievance

1. Informal Grievance (Form DC3-005)
2. Formal Grievance (Form DC1-303)
3. Appeal to the Office of Secretary (Form DC1-303)

Other Grievance

Inmates are not required to utilize the informal Grievance process in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by rule 33-11.0065 Incentive Gain Time, or a grievance involving disciplinary action (does not include corrective consultations) governed by chapter 33-22. The grievance steps are set forth in Fla. Admin. Code Chapter 33-29.

Questions:

A. Emergency Grievance, Grievance of Reprisal, or Grievance of a Sensitive Nature, Grievance Alleging Violation of the American with Disabilities Act, Medical Grievance, Grievance, Grievance Involving Admissible Reading Material, Grievance Involving Gain Time Governed by Rule 33-11.0065 Incentive Gain Time, or Grievance Involving Disciplinary Action Governed by Chapter 33-22 (Request for Administrative Remedy or Appeal, bypassing the informal grievance step).

   1. Did you submit an above-mentioned grievance to the Superintendent and/or to the office of Secretary (Form DC1-303)? Yes (X) No ( )

   2. If so, you must attach a copy of the grievance and response to this Complaint form.

   3. Were you denied emergency status? Yes (X) No ( )

      a. If so, did you go through the informal grievance, formal grievance and appeal process? Yes (X) No ( )

      b. If so, you must attach copies of the grievance/appeals and responses to this Complaint form.

B. Informal Grievance (Request for Interview)

DC 225 (Rev 9/03)                                  2

1. Did you submit an informal grievance (Form DC3-005)? Yes ( ) No (X)

2. If so, you must attach a copy of the grievance and response to this Complaint form.

C. Formal Grievance (Request for Administrative Remedy or Appeal)

1. Did you have a disciplinary hearing concerning this matter? Yes ( ) No (X)

2. If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this Complaint form.

3. Did you submit a formal grievance (Form DC1-303)? Yes (X) No ( )

4. If so, you must attach a copy of the grievance and response to this Complaint form.

D. Appeal to the Office of the Secretary (Request for Administrative Remedy or Appeal)

1. Did you submit an appeal to the Office of the Secretary (Form DC1-303)? Yes (X) No ( ).

2. If so, you must attach a copy of the appeal and response to this Complaint form.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _____ day of _____, 2 **012** .

_Walter P. Morrison_
Signature of Plaintiff

III. **DOES YOUR COMPLAINT CONCERN EVENTS IN A COUNTY JAIL OR LOCAL FACILITY?** Yes ( ) No (X)

If your answer is YES, answer the following questions.

A. Is there a grievance procedure at your institution or jail? Yes ( ) No ( )

B. Did you present the facts relating to your Complaint in the grievance procedure? Yes ( ) No ( )

C. If your answer is YES:

1. What steps did you take? _____

2. What were the results? _____

3. To demonstrate exhaustion, you must submit copies of all relevant grievances/appeals and responses.

D. If your answer is NO, explain why not: _NoT iN A CouNTY JAiL, OR A LoCAl FACiLiTY._

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _____ day of _____, 2 _012_ .

_Walter D. Morrison_
Signature of Plaintiff

IV. PREVIOUS LAWSUITS:

A. Have you initiated other lawsuits in <u>state</u> <u>court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?
Yes ( )  No (X)

B. Have you initiated other lawsuits in <u>federal</u> <u>court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?
Yes ( )  No (X)

C. If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

1. Parties to previous lawsuit:

   Plaintiff(s): _____

   _____

   Defendant(s): _____

   _____

2. Court (if federal court, name the district; if state court, name the county):

   _____

3. Docket Number: _____

4. Name of judge: _____

5. Briefly describe the facts and basis of the lawsuit: _____

   _____

   _____

6. Disposition (Was the case dismissed? Was it appealed? Is it still pending?):

   _____

   _____

7. Approximate filing date: _____

8. Approximate disposition date: _____

D. Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify theses suits below by providing the case number, the style, and the disposition of each case:

_____

_____

_____

_____

_____

V.  PARTIES: In part A of this section, indicate your <u>full name</u> in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.  Name of Plaintiff: WALTER DANIEL MORRISON, #033920

Mailing address: UNION CORRECTIONAL INSTITUTION, 7819 N.W. 228th STREET, RAIFORD, FLORIDA 32026 -

B.  Additional Plaintiffs: ON BEHALF OF ALL PRESENT AND FUTURE INMATES OF FLORIDA PENAL INSTITUTIONS, AND IN CASE OF MY DEATH MY SISTER CONSTANCE GUILDER, AND MY ESTATE.

In part C of this section, indicate the <u>full name</u> of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C.  Defendant: OLUGBENGA OGUNSANWO

Mailing Address: 501 South Calhoun STREET
TALLAHASSEE, FLORIDA 32399-2500

Position: DEPUTY SECRETARY HEALTH SERVICES

Employed at: FLORIDA DEPARTMENT OF CORRECTIONS

D.  Defendant: DR. MARTIN ROSENTHAL

Mailing Address: 501 South Calhoun STREET
Tallahassee, FLORIDA 32399-2500

Position: SENIOR Physician - HEALTH SERVICES

Employed at: FLORIDA DEPARTMENT OF CORRECTIONS

E. Defendant: FRANK JOHANSON
Mailing Address: 501 South Calhoun Street
Tallahassee, Florida 32399-2500
Position: Deputy Assistant Secretary, Health Serv. Administration
Employed at: Florida Department of Corrections

F. Defendant: Dr. J. Aviles
Mailing Address: 7819 N.W. 228th Street
Raiford, Florida 32026-4600
Position: Chief Health Officer, Union Corr. Inst.
Employed at: Florida Department of Corrections

G. Defendant: Dr. Radi Reception + Medical Center
Mailing Address: FDOC 17765 S. CR 213, P.O. Box 628
Lake Butler, Florida 32054-0628
Position: Contract Physician - Reception + Medical Center
Employed at: Florida Department of Corrections

VI. STATEMENT OF CLAIM: State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.

The Deputy Secretary for Health Services, Olugbenga Ogunsanwo, Florida Department of Corrections and The Chief Health Officer, Dr. J. Aviles, at Union Correctional Institution have knowingly instituted a medical protocol for diagnosis and treatment of Hepatitis-C that falls below constitutionally acceptable —

(Continued on page 8A)

VII. STATEMENT OF FACTS: State as briefly as possible the FACTS of your case. Describe how each defendant was involved. **Do not make any legal arguments or cite any cases or statutes.** State with as much specificity as possible the facts in the following manner:

1. Name and position of person(s) involved.
2. Date(s).
3. Place(s).
4. Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5. Nature and extent of injury (i.e., physical injury or how you were harmed by the acts of the defendant(s)).

1.) It has long been the medical protocol, practice and policy criteria originating in the Florida Department of Corrections (hereinafter "FDOC") Tallahassee Office of the Deputy Secretary for Health Services, approved by the Senior Physician for Health Services and implemented by the Deputy Assistant Secretary for Health Services Administration and the Chief Health Officers at all Florida prisons and by all contract phy-

VI. STATEMENT OF CLAIM: (CONTINUED FROM PAGE 8.)

STANDARDS OF MEDICAL CARE FOR FLORIDA INMATES.

FURTHER, AT UNION CORRECTIONAL INSTITUTION DR. J. AVILES HAS INSTITUTED A PRACTICE AND POLICY OF, "LET NATURE TAKE ITS COURSE.", IN THE TREATMENT OF POTENTIALLY FATAL DISEASES SUCH AS HEPATITIS-C AND CIRRHOSIS OF THE LIVER WHERE FLORIDA INMATES ARE IN IMMINENT DANGER OF SERIOUS PHYSICAL INJURY, SAID ABOVE PRACTICE AND POLICY FALLS BELOW ACCEPTABLE STANDARDS OF MEDICAL CARE FOR FLORIDA INMATES.

THE FLORIDA DEPARTMENT OF CORRECTIONS IN RECENT YEARS HAS BEGUN A PRACTICE AND POLICY OF NOT TESTING FOR, AND THUS, NOT DIAGNOSING POTENTIALLY FATAL DISEASES, PLACING THE INMATES IN IMMINENT DANGER, SO AS TO NOT HAVE TO PROVIDE EXPENSIVE MEDICAL TREATMENT.

THE FLORIDA DEPARTMENT OF CORRECTIONS MEDICAL PROTOCOLS, PRACTICES AND POLICIES ON THE TREATMENT OF HEPATITIS-C AND CIRRHOSIS OF THE LIVER HAVE CATEGORICALLY DENIED, PLAINTIFF WALTER D. MORRISON, TREATMENT FOR HEPATITIS-C AND CIRRHOSIS OF HIS LIVER TO THE POINT WHERE THE ONLY THING THAT WILL PRESERVE PLAINTIFF'S LIFE IS A LIVER TRANSPLANT.

THE ABOVE STATED MEDICAL PROTOCOLS, PRACTICES AND POLICIES HAVE VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS AGAINST CRUEL AND UNUSUAL PUNISHMENTS.

8A

Statement of Facts, continued:

sicians at all Reception and Medical Centers to systematically delay and deny medical treatment for the potentially fatal diseases Hepatitis-C and Cirrhosis of the Liver.

2.) In 1997, at Marion Correctional Institution, Plaintiff Morrison was first diagnosed with Hepatitis-C by the FDOC Medical Department. Plaintiff was informed by the 1997 doctor at Marion C.I. that because he had only 3-months remaining to serve on his sentence Plaintiff would receive no treatment for Hepatitis-C, not even a blood test to determine the genotype or genus of the virus or the viral load in his blood.

3.) In late 1998, over a year later, Plaintiff was returned to the FDOC at the Reception and Medical Center (hereinafter "R.M.C.") at Lake Butler, Florida with a new 20-year sentence. Plaintiff requested the doctors at R.M.C. for treatment for the previously diagnosed Hepatitis-C. Plaintiff was informed, specifically, "You have to wait until you get to your regular assigned institution for treatment."

4.) In 1998 Plaintiff was transferred from R.M.C. to regular assigned institution, Union C.I. In 2000,

Statement of Facts, continued:

After 2-years of repeated requests for treatment for his Hepatitis-C, Dr. J. Aviles caused Plaintiff to be transported to R.M.C. to been seen by the Gastroenterologist, Dr. Radi. After a cursory physical examination, Dr. Radi informed Plaintiff, "You are not a candidate for Hepatitis-C treatment now. Your liver enzymes are not high enough. You have low platelet count." "Under the FDOC policy directive criteria on Hepatitis-C you do not qualify for treatment for Hepatitis-C." Plaintiff requested Dr. Radi to order a blood test for determining his viral load and genotype the viris. Plus Plaintiff requested Dr. Radi to order a liver biopsy. Dr. Radi again said, "You no candidate for treatment." Dr. Radi refused to order blood work or a biopsy.

5.) In 2001 Plaintiff had a gallbladder removal operation. A Dr. Hagen in Macclenny, Baker County Florida performed the operation. Prior to the operation, Dr. Alpine, a blood specialist, examined Plaintiff physically and his blood. Dr. Alpine determined that Plaintiff was between stages 2 to 3 in liver fibrosis, but even though he had low blood platelets, his platelets were healthy, sticky and

Statement of Facts, continued:

high GRADE ENOUGH FOR PLAINTIFF TO UNDERGO THE GALLBLADDER OPERATION.

6.) APPROXIMATELY 10-DAYS AFTER THE GALLBLADDER OPERATION DR. HAGEN TRAVELED TO UNION C.I. TO EXAMINE PLAINTIFF FOR his HEALTH STATUS AND TO THE OPERATION SITE AND SCAR HEALING.

7.) ON THE DAY FOLLOWING DR. HAGEN'S VISIT TO UNION C.I., PLAINTIFF WAS AWOKEN AT 4:30 A.M. TO BE TRANSPORTED, BLACK-BOX HANDCUFFED AND SHACKLED, TO R.M.C. TO BE SEEN BY DR. RADI. PLAINTIFF REFUSED TO TRAVEL TO R.M.C. DUE TO his STILL RECOVERING FROM THE AFTER EFFECTS OF THE GALLBLADDER REMOVAL OPERATION.

8.) IN 2002, AFTER A YEAR OF BADGERING THE VARIOUS DOCTORS AT UNION C.I. FOR HEPATITIS-C AND FIBROSIS/Cirrhosis LIVER TREATMENT, PLAINTIFF WAS AGAIN TRANSPORTED TO R.M.C. TO SEE DR. RADI. DR. RADI INFORMED PLAINTIFF THAT THE FDOC POLICY DIRECTIVE AND CRITERIA FOR HEPATITIS-C TREATMENT had NOT CHANGED, "You NO CANDIDATE FOR TREATMENT." ONCE AGAIN DR. RADI REFUSED TO ORDER BLOOD WORK OR A LIVER BIOPSY TO DETERMINE how ADVANCED THE SCARRING IN his LIVER had BECOME.

Statement of Facts, continued:

9.) From 2002 through 2010 Plaintiff continued to request treatment for Hepatitis-C and Fibrosis/Cirrhosis Liver Treatment. On at least 3-occassions during this 2002-2010 time period Plaintiff was transported to R.M.C. from Union C.I. to be seen by Dr. Radi. On each and every occassion he was given the same response from Dr. Radi, "Criteria for treatment no change." "You no candidate for treatment." "I no order blood work or biopsy for you."

10.) In December 2010 Plaintiff had a serious build-up of ammonia in his blood due entirely to lack of medical treatment for his liver diseases. Plaintiff was transported to Memorial Hospital in Jacksonville, Florida for treatment. After numerous tests the doctors at Memorial Hospital recognized that Plaintiff had serious stage-4 cirrhosis of his liver. Determining that the extensive scarring in his liver was caused primarily by the untreated Hepatitis-C virus in his liver and blood.

11) Approximately 3 to 4 months later, March to April 2011, Plaintiff began experiencing a solid black stool. Plaintiff signed up for sick-call at Union C.I., but

Statement of Facts, continued:

But during the night began vomiting whole blood, extensive bleeding from the throat. Plaintiff was transported from Union C.I. to Memorial Hospital of Jacksonville, Florida by ambulance. Plaintiff underwent surgical repair of 7-bands in his esophagus. It was explained to Plaintiff by Memorial Hospital Surgeons that the severity of the scarring in his cirrhotic liver was almost stopping the blood flowing into his liver. This stoppage was causing the blood, and subsequent blood pressure, backed up into his esophagus and ruptured the blood vessels in the varices in his esophagus. Continuously, from 2002 throughout 2011 Plaintiff repeatedly requested Hepatitis-C and Cirrhosis treatment for his liver. Plaintiff was given the same pretextual excuses to deny liver treatment, "Liver enzymes not high enough," "Platelets too low," "You do not qualify under FDOC guideline criteria for Hepatitis-C Treatment." During this whole period of time 1997-2011, The FDOC Deputy Secretary for Health Services, The Senior Physician-Health Services, The Deputy Assistant Secretary-Health Services Administration, Dr. J. Aviles, Chief

Statement of Facts, continued:

Health Officer at Union C.I. and the Contract Gastroenterologist at R.M.C., Dr. Radi all knew or should have known that the Hepatitis-C viral count, not the liver enzyme level is the true determinative factor of the amount of scarring and damage being done to a human liver, and knew or should have known that there is a medical treatment to raise blood platelet levels, and knew or should have known that following the FDOC guidelines for Hepatitis-C treatment in Plaintiff's case would yield the end result of destroying Plaintiff's liver to such an extent that Plaintiff would die from the lack of liver disease treatment.

12.) In July to August 2011 Plaintiff's body swelled up with fluid retention and ammonia in his blood rose to such a level Plaintiff was again transported to Memorial Hospital in Jacksonville, Florida. A Gastroenterologist, Dr. Shaw and another surgeon installed a "Denver shunt," a manual pump in Plaintiff's side to recirculate fluid for elimination by his kidneys. The surgeon assisting Dr. Shaw commented within Plaintiff's hearing that his "Denver

Statement of Facts, continued:

Shunt" was the first one he had seen in over 20-years.

13) Plaintiff refused to be seen again by Dr. Radi, Dr. Shaw took over Plaintiff's liver treatment.

14) On January 24th, 2012, Dr. Shaw performed a further esophagus band repair to ensure Plaintiff did not bleed-out and die from blood loss. Dr. Shaw informed Plaintiff that he was in Stage-4 Cirrhosis, end stage, pending liver failure. Dr. Shaw explained that pursuant to FDOC Guidelines he couldn't order a Hepatitis-C Viral Load Blood Test, nor a biopsy of his liver. Dr. Shaw told Plaintiff that he didn't even know what genotype of Hepatitis-C he was infected with. Plaintiff renewed his requests for Hepatitis-C and Cirrhosis treatment and was again denied. Plaintiff requested specialized vitamin therapy for his failing liver, again denied.

15) Upon Plaintiff's latest return from treatment at Memorial Hospital, February 2012, and a 2-week stay at R.M.C., the prescriptions written at R.M.C. for ammonia control were not renewed by the admitting doctor at Union C.I. This unprofes-

Statement of Facts, continued:

signal lapse in treatment resulted in elevated ammonia levels in Plaintiff's blood and his admittance to the hospital ward at Union C.I. (R-Dorm) for blood cleansing treatment and anti-biotics for infection. Now, Plaintiff is receiving his proper medications, his ammonia blood levels have been greatly reduced, but Plaintiff is still receiving no Hepatitis-C or Cirrhosis treatment what so ever

16.) Dr. J. Aviles has adopted a No-Treatment Policy at Union C.I. of, "Let Nature take its course.", even if it means the death of the inmate with Liver disease.

VIII. <u>RELIEF REQUESTED</u>: State briefly what you want the Court to do for you. Again, do not make any legal arguments or cite any cases or statutes.

Immediately have the FDOC begin medical treatment for Plaintiff's Hepatitis-C and Cirrhosis of his Liver. Further, have this Court order the FDOC place Plaintiff's name on the Liver Donor/Liver Replacement List to ascertain a match for a new Liver, and once a match is found to replace Plaintiff's Liver.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this _____ day of _____, 2 012 .

_____
_____
_____
_____
(Signatures of all Plaintiffs)

DC 225 (Rev. 9/03)                                    10